UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUARANTEED RATE, INC.,

    Plaintiff,

v.

LIT FINANCIAL CORP. d/b/a
LITFINANCIAL,

    Defendant.

Case No:

Hon.

Magistrate Judge

_____/

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
By:  William B. Forrest III (P60311)
    David Porter (P76785)
Attorneys for Plaintiff
280 N. Old Woodward Ave.,
Suite 400
Birmingham, MI 48009
(248) 645-0000
wforrest@khvpf.com
dporter@khvpf.com

_____/

**COMPLAINT FOR DAMAGES AND INJUNCTION**

Plaintiff GUARANTEED RATE, INC., doing business as RATE ("Rate") brings this Complaint for Damages and Injunction against Defendant LIT FINANCIAL CORP. d/b/a LITFINANCIAL ("LitFinancial"), to stop LitFinancial's unlawful marketing campaigns.  LitFinancial designed its campaigns to lure existing and prospective Rate customers away from Rate and to LitFinancial by falsely suggesting a relationship between LitFinancial and Rate that does not exist.  Both because of the existing and prospective injuries to Rate and the harm to consumers, Rate seeks both damages and injunctive relief.

For its Complaint, Rate alleges as follows:

## NATURE OF THE ACTION

1.     This lawsuit challenges a predatory marketing scheme deployed by LitFinancial that deliberately hijacks Rate's name and customer relationships to steer Rate's borrowers into refinancing with LitFinancial. Beginning in 2025, LitFinancial mailed and texted misleading communications to Rate borrowers that omitted any reference to LitFinancial, instead using "Guaranteed Rate, Inc." in the headings and body text, and targeting recipients LitFinancial knew—from public records—were Rate customers. Those communications falsely implied a relationship with or sponsorship by Rate, created an urgent call-to-action instructing recipients to call a listed phone number "upon receipt," and expressly told some recipients that

LitFinancial "has a relationship with your originating lender" and knows their mortgage rate is "a lot higher than where today's market is at."

2.     LitFinancial's purpose was plain: trick consumers into believing the outreach was on behalf of their lender (Rate), induce them to contact the listed number, and pressure them into refinancing with LitFinancial. The scheme was not limited to one state; on information and belief, substantially similar mailers and texts were sent throughout Michigan and other jurisdictions where LitFinancial operates. If left unchecked—especially during any downturn in interest rates when refinancing activity and borrower susceptibility increase—LitFinancial's deceptive campaign will gain momentum, further confuse and harm Rate's customers, and irreparably damage Rate's reputation and customer relationships. Through this lawsuit, Rate seeks to stop LitFinancial's unlawful practices and vindicate its rights.

## PARTIES

3.     Plaintiff Rate is a Delaware corporation with its principal place of business in Chicago, Illinois.  Rate is one of the largest retail mortgage lenders in the country. Rate has helped homeowners nationwide with home purchase loans and refinances and has established itself as an industry leader by introducing innovative technology, offering low rates, and delivering unparalleled customer service.

4.      Defendant LitFinancial is a Michigan corporation with its principal place of business in Troy, Michigan.  LitFinancial is, on information and belief, a mortgage broker and correspondent lender licensed by the State of Michigan.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which gives the district courts jurisdiction "of all civil actions arising under the Constitution, laws or treaties of the United States."

6.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C § 1332(a)(1), because the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

7.      Rate is a citizen of Delaware and Illinois under 28 U.S.C. § 1332(c)(1). LitFinancial is a citizen of Michigan under 28 U.S.C. § 1332(c)(1).  Complete diversity of citizenship between the parties exists.

8.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1337(a), which gives the district court jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce."

9.      This Court has supplemental jurisdiction over the claims arising under Michigan law in this matter pursuant to 28 U.S.C. § 1367(a), which gives the district courts jurisdiction over "all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)-(2) because Defendant LitFinancial is located in this District, and because a substantial part of the events giving rise to the claim occurred in this District.

11.     Assignment to the Southern Division of this District is proper under 28 U.S.C. §102(a)(1) and Local Rules 83.10(a)(1) and (b)(4) of this Court, because the case arose in, and is related to, Oakland County.

## LITFINANCIAL'S UNLAWFUL CONDUCT

12.     Rate is a mortgage lender. Its business model is to originate and fund mortgage loans for customers to enable the purchase of properties, primarily homes for the families of those customers.

13.     LitFinancial is, on information and belief, a mortgage lender and mortgage broker.

14.     Because the customers of both Rate and LitFinancial are the same population of prospective home purchasers, Rate and LitFinancial are competitors.

15.     Rate does not, and has not at any time, engaged in any business partnership or relationship with LitFinancial.

16.     LitFinancial engages in advertising and marketing to consumers in order to gain customers for its brokerage services.

4

17.     In 2025, Rate first became aware that LitFinancial had created and sent mail advertisements to prospective customers that falsely suggested a connection between LitFinancial and Rate.  LitFinancial sent the letter attached as Exhibit 1 to one or more consumers.

18.     The letter makes no reference to LitFinancial at all. It instead references "Guaranteed Rate, Inc." both in its heading and in the body. The letter claims that the loan "has met seasoning requirements and has been marked for an eligibility notice" and states that "it is important that you contact us . . . upon receiving this notice."  Ex. 1, Letter.

19.     The letter was targeted to recipients that LitFinancial knew had done business with Rate in the past based on public records.

20.     The letter was designed to confuse and mislead the recipients into thinking that the letter either originated from Rate or was from a company doing business with Rate.

21.     The letter was designed to create a false sense of sponsorship or approval of its contents by Rate.

22.     The letter was also designed to create a sense of urgency in the recipients by asserting that calling the phone number listed was "important" and that such importance required contacting the included number "upon receipt."

23.    The above letter and others in substantially the same form were, on information and belief, sent to consumers throughout Michigan and in other states and jurisdictions where LitFinancial is licensed to conduct, or otherwise conducts, its mortgage brokerage business.

24.    In addition to its misleading letters, LitFinancial also began making and sending text message advertisements to prospective customers that similarly falsely asserted a connection between LitFinancial and Rate.  During 2025, LitFinancial sent the text message attached as Exhibit 2 to one or more consumers who reached out regarding the misleading mailers they received.

25.    The text message explicitly and falsely states that LitFinancial "ha[s] a relationship with your originating lender."  Ex. 2, Text Message.

26.    LitFinancial, on information and belief, sent the text message to the same consumers to whom it sent the letter attached as Exhibit 1, or "this letter" as described in the text message.

27.    The text message falsely claims that, as a result of that "relationship with your originating lender", the sender knows that the recipient's current mortgage rate "is a lot higher than where today's market is at."  Ex. 2, Text Message.

28.    The text message asserts that the sender has "helped" "hundreds of clients" who received "this letter" over the past 4 months.

29.     Mark Hoover, the sender of the text message, is listed as an Executive Loan Officer on LitFinancial's web site as of the date of the filing of this complaint.[1]

30.     Mark Hoover is an employee and an agent of LitFinancial.

31.     The lender who originated the mortgage of the recipient of the text message above is, on information and belief, Rate.

32.     Rate does not have a relationship with LitFinancial or with Mark Hoover.

33.     The text message was, on information and belief, targeted to recipients that LitFinancial knew had done business with Rate in the past.

34.     The text message was designed to confuse the recipients into thinking that the message was from Rate or a company doing business with Rate.

35.     The text message was designed to create a false sense of sponsorship or approval of the messages therein, and of the sender of the message, by Rate.

36.     Upon information and belief, the text message, and others in substantially the same form, were sent to consumers throughout Michigan and in other states and jurisdictions where LitFinancial is licensed to conduct, or otherwise conducts, its mortgage brokerage business.

37.     The advertisements above were not sent in isolation; they are part of a coordinated marketing campaign designed by LitFinancial for the specific purpose

---

[1] *See* https://litfinancial.com/agent/mark-hoover.

of misleading consumers into concluding that the sender was either Rate or affiliated with Rate, and taking those customers from Rate through such deception.

38.　The advertisements above attempted to use the name, the goodwill, and the good reputation of Rate for the benefit of LitFinancial and in order to take both potential and existing Rate customers away from Rate.

39.　On information and belief, LitFinancial has engaged in other advertising campaigns that similarly attempt to confuse Rate's customers and other consumers into associating LitFinancial and Rate in order to take both existing Rate customers and prospective Rate customers away from Rate.

40.　None of LitFinancial's actions described above were done with approval from Rate.

41.　Each of LitFinancial's actions described above were done in order to cause financial injury to Rate.

42.　Each of LitFinancial's actions described above has injured Rate in ways that are in some ways quantifiable and in some ways unquantifiable.  Those injuries include but are not limited to the following:

> a. Rate has been injured and will continue to be injured in the future by loss of revenue from its existing customers who were lured to LitFinancial by LitFinancial's false advertisements;
>
> b. Rate has been injured and will continue to be injured in the future by loss of goodwill from its customers who were lured to LitFinancial by LitFinancial's false advertisements;

    c. Rate has been injured and will continue to be injured in the future by loss of revenue from potential customers who have been deceived by LitFinancial's false advertisements;

    d. Rate has been injured and will continue to be injured in the future by the diminution of its name, its trademarks and its products through the confusion caused by LitFinancial's public misrepresentation of its relationship to Rate.

43.    In addition to the quantifiable injuries listed above, each of LitFinancial's actions has injured Rate in ways that are both irreparable and for which damages are not an adequate remedy.

44.    As a result of the irreparable injury to Rate, entry of an injunction to prevent LitFinancial's continuation of such advertising is appropriate.

45.    A real and imminent danger of irreparable injury to Rate exists presently, due to consumer confusion over LitFinancial's falsely-asserted relationship with Rate,

46.    The harm to Rate from LitFinancial's continued attempts to confuse Rate customers and other consumers greatly outweighs any harm to LitFinancial from granting injunctive relief.

47.    The likelihood of success on the merits weighs in favor of an injunction. LitFinancial cannot reasonably assert that it did not send the advertisements above, and cannot reasonably assert that it sent those advertisements for any purpose other than to confuse Rate's customers and, consequently, to harm Rate financially.

48.     The public interest of both the State of Michigan and the United States will be furthered by entry of an injunction against LitFinancial.  The public interest is best demonstrated in the laws passed by the legislatures of both sovereign entities, each of which declare the illegality of the actions taken by LitFinancial.

## COUNT I
### (Violation of 15 U.S.C. §§ 1114(1), 1117, 1125)

49.     Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

50.     The Lanham Act makes it illegal to infringe another's trademarks, or to use or colorably imitate another's name, or make any false or misleading representation of fact which causes confusion or deception as to the affiliation, connection or association of one person with another. 15 U.S.C. §§ 1114(1), 1117, 1125.

51.     LitFinancial's advertisements violate the Lanham Act by using Rate's name to make misleading representations of fact causing confusion and deception as to the affiliation between Rate and LitFinancial, and by using or colorably imitating Rate's name and trademarks.

52.     LitFinancial's wrongful conduct has been willful and was specifically undertaken for the purpose of injuring Rate and benefiting LitFinancial.

53.     LitFinancial's conduct is ongoing and continues through the date of the filing of this Complaint.

54.     Rate has been injured by LitFinancial's conduct in an amount to be determined at trial.

55.     Rate is entitled to injunctive relief pursuant to the Lanham Act due to LitFinancial's violations of that statute.  15 U.S.C. §§ 1125(c)(5), 1116(a).

56.     Rate is entitled to recover LitFinancial's profits, Rate's damages, and the costs of this action.  15 U.S.C. § 1117(a).

57.     Due to the severity of LitFinancial's deception, this case constitutes an "exceptional case" under the Lanham Act, and Rate is thus entitled to recover its reasonable attorneys' fees from LitFinancial. 15 U.S.C. § 1117(a).

## COUNT II
### (Violation of MCL 429.42(a))

58.     Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Michigan's Trademarks and Service Marks Act makes it illegal to infringe another's trademarks, or to use or colorably imitate another's name, or make any false or misleading representation of fact which causes confusion or deception as to the affiliation, connection or association of one person with another. MCL §429.42(a).

60.     LitFinancial's advertisements violate the Trademarks and Service Marks Act by using Rate's name to make misleading representations of fact causing

confusion and deception as to the affiliation between Rate and LitFinancial, and by using or colorably imitating Rate's name and trademarks.

61.    LitFinancial's wrongful conduct has been willful and was specifically undertaken for the purpose of injuring Rate and benefiting LitFinancial.

62.    LitFinancial's conduct is ongoing and continues through the date of the filing of this Complaint.

63.    Rate has been injured by LitFinancial's conduct in an amount to be determined at trial.

64.    Rate is entitled to injunctive relief pursuant to the Trademarks and Service Marks Act due to LitFinancial's violations of that statute.  MCL § 429.43(1).

65.    Rate is entitled to recover LitFinancial's profits, Rate's damages, and the costs of this action.

## COUNT III
### (Common Law Trademark Infringement/Palming Off)

66.    Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

67.    Michigan common law allows an action for trademark infringement or "palming off."

68.    Rate's trade names, trademarks and service marks are valid, are being used in the market, and are distinctive, in that consumers associate the names and marks with Rate's business.

69.    Rate used the names and marks before LitFinancial used the names and marks.

70.    LitFinancial used Rate's names and marks for the purpose of confusing consumers as to the source of LitFinancial's products or services.

71.    LitFinancial is in competition with Rate.

72.    LitFinancial used Rate's names and marks knowing that such use would cause financial loss to Rate, and with the intent that it cause such harm.

73.    LitFinancial's use of Rate's names and marks caused Rate actual monetary harm, including lost revenue from customers, lost profits, damage to its trademarks and trade names, and damage to its business reputation.

74.    LitFinancial's use of Rate's names and marks caused special damages to Rate, including the loss of existing and prospective customers and the revenues and profits from those customers.

75.    The amount of such loss is currently unknown and will be proven at trial, but the representations in LitFinancial's advertisements assert that "hundreds" of Rate customers have already been lured away from Rate and to LitFinancial by its false advertisements.

76.    Rate demands its lost profits, special damages, and damage to its trademarks, trade names, service marks, and business reputation.

77.     Rate demands an injunction to halt LitFinancial's illegal use of its names and marks and to prevent such use in the future.

78.     Rate demands the equitable remedies of disgorgement and restitution in addition to the legal remedies described.

## COUNT IV
## (Violation of MCL 445.911)

79.     Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

80.     The Michigan Consumer Protection Act declares unlawful various "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."   Included among those unlawful practices are causing "a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," using "deceptive representations or deceptive designations of geographic origin in connection with goods or services," disparaging "the goods, services, business, or reputation of another by false or misleading representation of fact," and making "a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." MCL §445.903 (a), (b), (f), (bb).

81.     Each of LitFinancial's advertisements separately violate the Michigan Consumer Protection Act by intentionally confusing the recipient as to the relationship between LitFinancial and Rate.

82.     LitFinancial's wrongful conduct has been willful and was specifically undertaken for the purpose of injuring Rate and benefiting LitFinancial.

83.     LitFinancial's conduct is ongoing and continues to this date.

84.     Rate has been injured by LitFinancial's conduct in an amount to be determined at trial.

85.     Because of such violations, the Michigan Consumer Protection Act entitles Rate to an injunction, actual or statutory damages, plus reasonable attorneys' fees and possible punitive damages.  *See* MCL § 445.911 (1), (2), (3)

86.     Rate demands the greater of its actual damages or statutory damages in the amount of $250.00 for each violation of the Michigan Consumer Protection Act.

87.     On information and belief, LitFinancial's advertisements to consumers in states other than Michigan separately violate the unfair and deceptive trade practices statutes and consumer protection statutes of each such state. Rate reserves the right to amend this Complaint after discovery to assert any claims to statutory damages under the statutes of such other states.

15

## COUNT V
### (Commercial Disparagement)

88.     Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

89.     LitFinancial made statements of fact about Rate that were untrue and damaging to Rate's reputation.

90.     The statement by Mark Hoover, an employee and agent of LitFinancial, that LitFinancial "has a relationship" with Rate is untrue and damaging to Rate's reputation.

91.     The other statements made by LitFinancial about Rate in its advertisements are untrue and damaging to Rate's reputation.

92.     The statements made by LitFinancial violated federal law (the Lanham Act), federal regulations (Truth In Lending Act Regulation Z, 12 C.F.R §1026.24), and Michigan law (the Michigan Consumer Protection Act).

93.     The statements made by LitFinancial were not made under circumstances that would give LitFinancial legal protection.

94.     The false statements made by LitFinancial were communicated to someone other than to LitFinancial itself.

95.     LitFinancial acted with intent and actual malice in making the false statements.

96.    LitFinancial made the false statements knowing that the statements would cause financial loss to Rate, and with the intent that they cause such harm.

97.    LitFinancial's false statements caused Rate actual monetary harm, including lost revenue from customers, lost profits, damage to its trademarks and trade names, and damage to its business reputation.

98.    LitFinancial's false statements caused special damages to Rate, including the loss of existing and prospective customers and the revenues and profits from those customers.

99.    The amount of such loss is currently unknown and will be proven at trial, but the representations in LitFinancial's advertisements assert that "hundreds" of Rate customers have already been lured away from Rate and to LitFinancial by its false advertisements.

100.    Rate demands its lost profits, special damages, and damage to its trademarks, trade names, and business reputation.

101.    Rate demands an injunction to halt LitFinancial's illegal advertisements and to prevent them in the future.

102.    Rate demands the equitable remedies of disgorgement and restitution in addition to the legal remedies described.

## COUNT VI
### (Injurious Falsehood)

103.   Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

104.   LitFinancial made statements of fact about Rate that were untrue and damaging to Rate's reputation.

105.   Michigan's common law provides a cause of action for injurious falsehood.

106.   LitFinancial made false statements disparaging Rate's services.

107.   LitFinancial published its false statements disparaging Rate's services to third parties.

108.   LitFinancial made its false statements with malicious intent or a reckless disregard for their truth or falsity.

109.   LitFinancial's false statements caused actual economic damages to Rate, including the loss of existing and prospective customers and revenue and profits from such customers.

110.   The amount of such loss is currently unknown and will be proven at trial, but the representations in LitFinancial's advertisements assert that "hundreds" of Rate customers have already been lured away from Rate and to LitFinancial by its false advertisements.

111.  Rate demands its lost profits, special damages, and damage to its trademarks, trade names, and business reputation.

112.  Rate demands the equitable remedies of disgorgement and restitution in addition to the legal remedies described.

## COUNT VII
## (Unfair Competition)

113.  Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

114.  Michigan's common law provides a cause of action for unfair competition.

115.  LitFinancial made statements of fact about Rate that were untrue and damaging to Rate's reputation.

116.  LitFinancial is in actual competition with Rate for the same customers and potential customers.

117.  LitFinancial, by its advertising described above, simulated the name, symbols or devices employed by Rate for the purpose of deceiving the public.

118.  By its actions, LitFinancial falsely induced the purchase of its products and thereby obtained for itself the benefits properly belonging to its competitor, Rate.

119.  LitFinancial's false statements caused actual economic damages to Rate, including the diminution of its name, symbols and devices, in addition to the

loss of existing and prospective customers and revenue and profits from such customers.

120.   The amount of such loss will be proven at trial.

121.   Rate demands an injunction to halt LitFinancial's illegal deception of Rate's recent, existing, and prospective customers and its acquisition of such customers.

122.   Rate demands the equitable remedies of disgorgement and restitution in addition to the legal remedies described.

## COUNT VIII
### (Tortious Interference with Existing and Prospective Economic Relations)

123.   Plaintiff Rate incorporates by reference the foregoing allegations as if fully set forth herein.

124.   Michigan's common law provides a cause of action for tortious interference with existing or prospective economic relations.

125.   Present economic relations existed between Rate and its customers.

126.   Prospective economic relations existed between Rate and both its existing and prospective customers.

127.   LitFinancial knew about the relationships between Rate and its existing and prospective customers.

128.   LitFinancial improperly and intentionally interfered with the relationships between Rate and its existing and prospective customers through its

use of deceptive advertising that falsely claimed and falsely suggested a relationship between LitFinancial and Rate, in at least the following ways:

    a.    LitFinancial crafted the advertisements specifically to suggest a relationship between LitFinancial and Rate that did not exist;

    b.    LitFinancial crafted the advertisements to confuse existing and prospective Rate customers as to that non-existent relationship;

    c.    LitFinancial falsely claimed that it had a "relationship" with Rate;

    d.    LitFinancial targeted the advertisements to current customers of Rate;

    e.    LitFinancial created an urgent call-to-action instructing recipients to call a listed phone number "upon receipt;" and

    f.    LitFinancial falsely told recipients that LitFinancial knows their mortgage rate is "a lot higher than where today's market is at."

129.   Rate incurred damage because of LitFinancial's interference.

130.   The amount of such damage will be proven at trial.

131.   Rate demands an injunction to halt LitFinancial's illegal deception of Rate's recent, existing, and prospective customers and its acquisition of such customers.

132.   Rate demands the equitable remedies of disgorgement and restitution in addition to the legal remedies described.

WHEREFORE, Plaintiff Guaranteed Rate, Inc. prays that this Court enter judgment in its favor and against Defendant LitFinancial Corp. for the following relief:

(a)  An award of actual damages for loss of revenue from established Rate customers;

(b)  An award of actual damages for harm done to Rate's trademarks, trade names and other intellectual property;

(c)  An award of actual damages for harm done to Rate's business reputation;

(d)  An award of actual damages for harm done to Rate's business enterprise value;

(e)  An award of lost profits;

(f)  An award of incidental and consequential damages;

(g)  An award of special damages;

(h)  An award of treble damages;

(i)  An award of recoupment of LitFinancial's gain and profit from its illegal acts;

(j)  An award of statutory damages under the Michigan Consumer Protection Act;

(k)  An injunction requiring LitFinancial. to cease its unlawful behavior;

(l)  Disgorgement of LitFinancial's revenue derived from its unlawful advertisements;

(m)  Restitution of Rate's lost revenue;

(n)     Rate's costs of suit;

(o)     Rate's reasonable attorneys' fees; and

(p)     Such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/William B. Forrest III*
    William B. Forrest III (P60311)
    David Porter (P76785)
*Attorneys for Plaintiff*
*Guaranteed Rate, Inc., d/b/a Rate*
280 N. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
(248) 645-0000
wforrest@khvpf.com
dporter@khvpf.com

Dated: October 2, 2025
585009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUARANTEED RATE, INC.,

     Plaintiff,

v.

LIT FINANCIAL CORP. d/b/a
LITFINANCIAL,

     Defendant.

Case No:

Hon.

Magistrate Judge

_____/

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
By:  William B. Forrest III (P60311)
     David Porter (P76785)
Attorneys for Plaintiff
280 N. Old Woodward Ave.,
Suite 400
Birmingham, MI 48009
(248) 645-0000
wforrest@khvpf.com
dporter@khvpf.com

_____/

**INDEX OF EXHIBITS**

| **Exhibit** | **Description** |
| --- | --- |
| 1 | Letter |
| 2 | Text Message |

585048

**EXHIBIT 1**

**RE: Guaranteed Rate, Inc.**
Notification Date: ▮▮▮▮▮▮

**Reference #:** ▮▮▮▮▮▮

Reference Number: ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

For additional information contact
your service representative
toll-free (888) 428-1971

Your loan funded through Guaranteed Rate, Inc. has met seasoning requirements and has been marked for an eligibility notice. It is important that you contact us toll-free (888) 428-1971 upon receiving this notice.

Your $263,920.00 mortgage could have a new monthly payment of $1,415.17. Loans closing in August 2025 will have a new first payment date of November 2025.

**Mortgage Amount:**
**New Rate:**
**New P&I:**
**Estimated Escrow Refund:**
**New Term:**

*The payment above does not include amounts for taxes and insurance premiums, if applicable, the actual payment obligation will be greater.*
*\* The APR shown is not reflective of the loan shown in the letter. It is based on the following mortgage scenario: Conventional 30 Year Fixed loan, 4.99% interest rate, APR 5.35%, loan amount of $315,000.00, 75% Loan-to-Value, 700 credit score, rate and term refinance only.*

Call to discuss your options, even if you have been turned down before.

**Call: (888) 428-1971**
**Reference:** ▮▮▮▮▮▮

\*Phone calls will be processed in the order received and this program is limited to only the beneficiary above and is non-transferable

Please see the reverse side for company and licensing information

**EXHIBIT 2**

+1 (586) 231-4117 >

We have a relationship with your originating lender, so I know that your current mortgage closed within the last 2 years and that your current rate is a lot higher than where today's market is at.

Over the past 4 months we've been able to help hundreds of clients that have received this letter.

If you're interested in a free mortgage review please let me know.

Mark Hoover
W- 248-817-4005
C - 586-231-4117
NMLS: 28157

litfinancial.com